UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENIS ALIC,<br><br>                          Petitioner,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY/IMMIGRATION CUSTOMS ENFORCEMENT, et al.,<br><br>                          Respondents. | Case No.: 25-cv-01749-AJB-BLM<br><br>**ORDER GRANTING PETITION AND ISSUING WRIT OF HABEAS CORPUS**<br><br>**(Doc. No. 1)** |

Petitioner Denis Alic ("Petitioner"), appearing *pro se*, has been detained in the custody of the United States Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("ICE"), at the Otay Mesa Detention Center in California since July 2024. (Doc. No. 1.) On July 7, 2025, Petitioner filed the instant petition for writ of habeas corpus under 28 U.S.C. § 2241 (the "Petition,") and related motion to grant release ("Motion"),[1] seeking relief due to prolonged detention in

---

[1] Although the Motion was docketed as a separate motion filing, the Petition refers to the "attached motion" as providing "more detailed information" (Doc. No. 1 at 7), indicating that Petitioner may have intended the Motion as a part of the Petition.

1

immigration custody pending removal. (*See* Doc. Nos. 1; 2.) For the reasons set forth below, the Court **GRANTS** the Petition.

I.    BACKGROUND

Petitioner was born on November 22, 1993, in Croatia after Petitioner's parents, citizens of Bosnia and Herzegovina (hereafter "Bosnia"), fled their native country during the Bosnian War. (*See* Doc. Nos. 2 at 2; 2-1 at 14; 11; *see also* Declaration of Marielle Ceja ("Ceja Decl."), Doc. No. 5-1, at ¶¶ 5, 12; Doc. No. 5-2 at 13.) On February 8, 1996, Petitioner was admitted to the United States as a lawful permanent resident, as a child of a refugee. (Doc. Nos. 2-1 at 20; 5 at 2; 5-2 at 12.)

From 2019 to 2024, Petitioner was arrested and convicted multiple times, including convictions for methamphetamine possession and felony burglary. (Doc. No. 5-2 at 5, 11, 13–14.) Petitioner has since completed his sentences. (*See* Doc. No. 6 at 5 (Letter from Tamika Nelson, Chief Probation Officer, San Diego County Probation Department).) On December 29, 2023, ICE issued a Notice to Appear, charging Petitioner with removability under 8 U.S.C. 1137(a)(2)(B)(i) as someone convicted of a crime relating to a controlled substance. (DHS Notice to Appear, Doc. No. 5-2 at 2–4.) After Petitioner failed to appear at the removal hearing on February 28, 2024, an Immigration Judge ordered Petitioner removed to Croatia. (Removal Order, Doc. No. 2-1 at 1–5; *see also* Doc. No. 1 at 2, 4.)

On May 26, 2024, ICE "encountered [Petitioner] during immigration checks at the George Bailey Detention Center (GBDC) California State Prison." (Doc. No. 5-2 at 12; *see also* Doc. No. 5 at 2.) On July 11, 2024, Petitioner was transferred to ICE custody from GBDC pursuant to an immigration detainer. (Ceja Decl. ¶ 7; Doc. Nos. 1 at 4; 2 at 1; 5 at 2; 5-2 at 10, 12.)

From September 2024 through to the present, ICE has been attempting to procure travel documents for Petitioner from either Croatia or Bosnia. (*See generally* Doc. Nos. 1; 2; 5; 6.) On November 1, 2024, ICE submitted a request for travel documents to the Croatian Consulate. (Ceja Decl. ¶ 9.) On December 18, 2024, "the Government of Croatia informed [Respondents] that Petitioner's identity was unverifiable based on the provided

2

information and declined to issue a travel document." (Ceja Decl. ¶ 10; *see also* Doc. No. 2-1 at 14, 16.) From February to May 2025, Respondents engaged with the Bosnian Consulate to determine whether the Government of Bosnia would issue travel documents for Petitioner. (Ceja Decl. ¶¶ 11–16; *see also* Doc. Nos. 2 at 2; 2-1 at 24.) On July 22, 2025, the Bosnian Consulate declined to issue travel documents and informed Respondents that it "believes Petitioner is a citizen of Croatia." (Ceja Decl. ¶ 18; Doc. No. 6 at 1.) At which point, Respondents submitted a renewed request to Croatia that remains pending to date. (Ceja Decl. ¶ 19.)

During this time, Petitioner signed forms ICE brought him, provided information as requested, and requested status updates. (*See* Doc. Nos. 2-1 at 9–10, 14–18, 22–24.) ICE procured both of Petitioner's parents' passport information and spoke with Petitioner's mother and sister; however, ICE was unable to procure a copy of Petitioner's birth certificate or that of Petitioner's mother because allegedly no such documents exist. (Ceja Decl. ¶¶ 12, 15, 17; Doc. No. 6 at 2.) ICE issued a decision to continue Petitioner's detention on April 13, 2025. (Decision to Continue Detention, Doc. No. 2-1 at 19–20.)

On July 7, 2025, Petitioner filed the instant Petition and related Motion. (Doc. Nos. 1; 2.) The Court issued a briefing schedule, set a hearing, and ordered Petitioner appear in person. (Doc. Nos. 3; 7; 8.) On August 11, 2025, Respondents filed a return, opposing the petition. (Doc. No. 5.) Petitioner filed a traverse on September 12, 2025. (Doc. No. 6.) The Court held a hearing on September 29, 2025. (Doc. No. 11.) Petitioner and counsel for Respondents appeared, along with a Deportation Officer. (*Id.*) This order follows.

## II.   LEGAL STANDARD

To succeed on a habeas petition, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Fifth Amendment's Due Process Clause provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States,

including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682. "An alien ordered removed who is inadmissible . . . , removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" 8 U.S.C. § 1231(a)(6). "[I]n light of the Constitution's demands, . . . an alien's post-removal-period detention [is limited] to a period reasonably necessary to bring about that alien's removal from the United States[,] . . . not . . . indefinite detention." *Zadvydas*, 533 U.S. at 689. "'[F]or the sake of uniform administration in the federal courts,' and based on its reading of Congress's probable intent, the [Supreme] Court created a 'presumptively reasonable period of detention' of six months." *Xi v. U.S. I.N.S.*, 298 F.3d 832, 840 (9th Cir. 2002) (quoting *Zadvydas*, 533 U.S. at 680).

In challenging detention pursuant to § 2241, the noncitizen has the initial burden to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. If the noncitizen satisfies the initial burden, then the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden, then the non-citizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

### III. DISCUSSION

Petitioner asserts that there is no significant likelihood of removal in the reasonably foreseeable future because he has been detained for over a year, both Bosnia and Croatia have refused to issue travel documents, no additional documentation of his identity such as a birth certificate exists, and he has cooperated with ICE in his removal. (*See generally* Doc. Nos. 1; 2; 6; 11.)

Respondents argue that "it would be premature to reach that conclusion before permitting ICE an opportunity to complete its diligent efforts to effect Petitioner's removal." (Doc. No. 5 at 5.) The only effort Respondents detail is that "ICE renewed the travel document request with Croatia and is working with partner agencies to obtain identity documents for Petitioner." (*Id.*) When questioned at oral arguments, Respondents proffered no additional information, reiterating that "at some point ICE will decide it's not significantly likely and release him, but they haven't reached that point yet." (Doc. No. 11.) Respondents further confirmed that, to their knowledge, no additional documentation was provided with the renewed request. (*Id.*) Curiously, per Respondents' Counsel, ICE has not reviewed Petitioner's A File which would contain all of his immigration documents including the issuance of his Legal Permanent Resident status in 1996 as the child of refugee parents. (*Id.*) Certainly evidence of identity and origin should be contained therein.

As argued in the traverse, Petitioner testified that a birth certificate does not exist for him. (*Id.*) When questioned whether either Bosnia or Croatia has a history of taking individuals who lack a birth certificate from the requisite country, a Deportation Officer testified at the hearing that, to her knowledge, neither country would issue travel documents to such an individual. (*Id.*)

Based on the papers and the hearing, Petitioner met the initial burden of demonstrating that removal is not significantly likely in the reasonably foreseeable future. *See, e.g.*, *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *14 (W.D. Wash. Aug. 21, 2025) (finding a petitioner carried his burden by demonstrating he had none of the information requested by the Vietnamese self-declaration form, no known connections in Vietnam, and fled the country as a refugee); *Lopez-Cacerez v. McAleenan*, No. 19-CV-1952-AJB-AGS, 2020 WL 3058096, at *5 (S.D. Cal. June 9, 2020) ("[District] courts have noted that it is appropriate to grant habeas relief where there is no definitive answer from the target county after several months as to whether it would issue travel papers for a detainee.") (citations omitted).

///

|   |   |
|---|---|
| 1 | Moreover, Respondents failed to provide any substantive rebuttal of Petitioner's |
| 2 | showing. Despite a renewed request for travel documents pending with the Croatian |
| 3 | Consulate, Respondents fail to identify any basis—let alone a reasonable one—for the |
| 4 | belief that this time Croatia's response would be different. *See, e.g.*, *Lopez-Cacerez*, 2020 |
| 5 | WL 3058096, at *6 ("[G]eneral indications that U.S. agencies have been in discussions |
| 6 | with [target country] regarding repatriation efforts do not indicate that those discussions |
| 7 | will result in the timely removal of Petitioner, as it is unclear whether those efforts will be |
| 8 | successful."); *Nibkakhsh-Tali v. Mukasey*, No. CV07-1526PHX-NVW, 2008 WL |
| 9 | 2328354, at *8 (D. Ariz. June 4, 2008) ("In light of the two denial letters, and Mr. |
| 10 | Jahansoozan's inability to even speculate as to when travel documents might be |
| 11 | forthcoming, Respondent[s] have not come forth with evidence establishing that it is clear |
| 12 | that there is a significant likelihood of removal, much less in the reasonably foreseeable |
| 13 | future."). In fact, testimony by the Deportation Officer calls into question whether a copy |
| 14 | of a Croatian birth certificate—were Petitioner to even have one—would be acceptable to |
| 15 | Croatia under the circumstances of this case. ICE's belief based on no articulable evidence |
| 16 | is not sufficient. *See, e.g.*, *Nguyen*, 2025 WL 2419288, at *16 (finding the Government |
| 17 | failed to meet its burden because showing that "there is at least some possibility that |
| 18 | Vietnam will accept [the p]etitioner at some point . . . is not the same as a significant |
| 19 | likelihood that he will be accepted in the reasonably foreseeable future"). |
| 20 | At oral arguments, Respondents noted that Petitioner "has not been deemed non- |
| 21 | cooperative" but asserted that Petitioner's sister has the necessary documentation and is |
| 22 | refusing to cooperate. (Doc. No. 11.) Respondents fail to provide any basis for this belief |
| 23 | or articulate what that documentation is, especially considering Petitioner avers that no |
| 24 | birth certificate exists and that his sister does not have a copy of any of his other documents. |
| 25 | (*See id.*) Even assuming arguendo that Respondents are correct, "Respondent[s] proffer[] |
| 26 | nothing to suggest that there is more Petitioner could do to facilitate obtaining a birth |
| 27 | certificate through family members." *See Kebe v. Gurule*, No. CV161116PHXJATJFM, |
| 28 | 2016 WL 6404170, at *8 (D. Ariz. Sept. 29, 2016), *report and recommendation adopted,* |

No. CV-16-01116-PHX-JAT, 2016 WL 6277546 (D. Ariz. Oct. 27, 2016) (holding that a petitioner cannot be deemed uncooperative for the inaction of family members where the petitioner himself provides affirmative assistance in obtaining records).

Considering that Petitioner met his burden and that Respondents fail to proffer a substantive rebuttal, the Court finds that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Thus, the Court holds that continued detention of Petitioner is "unreasonable and no longer authorized." *See Zadvydas*, 533 U.S. at 680.

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** the Petition for habeas relief (Doc. No. 1) and **ISSUES** a writ of habeas corpus requiring Petitioner's immediate release from custody.[2] The Court further **ORDERS**:

1. Respondents must release Petitioner from custody within **48 hours** of the electronic docketing of this Order.

2. **No later than 12:00 PM on October 3, 2025**, counsel for Respondents must file and serve a declaration averring that Respondents have complied with this Order and that Petitioner has been released.

3. Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are prohibited from removing Petitioner to a country other than Croatia or Bosnia without notice and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge.

**IT IS SO ORDERED.**

Dated: September 30, 2025

Hon. Anthony J. Battaglia
United States District Judge

---

[2]  Having so ordered, the Court **DENIES as moot** Petitioner's Motion for Release (Doc. No. 2.)